O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| SYLVIA TARVER, ) | Case No. EDCV 08-01416-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Sylvia Tarver seeks judicial review of the Commissioner's final decision denying her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**I. Background**

Plaintiff filed her application for SSDI and SSI benefits on December 22, 2005, alleging disability as of December 13, 2005 due to bipolar disorder. (Administrative Record ("AR") at 51, 108-110, 112.) Plaintiff was born on June 18, 1956. (AR at 82.) She completed high

school and two years of college. (AR at 28.) Plaintiff was employed for many years as a licensed vocational nurse. (AR at 15, 113.) She last worked in December 2005.

Plaintiff's applications were denied initially on March 6, 2006 and upon reconsideration on October 25, 2006. (AR at 55-62, 66-76.) An administrative hearing was started on November 19, 2007 and concluded on January 28, 2008, before ALJ Joseph D. Schloss. (AR at 26-43, 46-50.) Plaintiff, represented by counsel, testified at the November 19, 2007 hearing (AR at 27-42) and a medical expert, William H. Soltz, Ph.D., testified at the January 28, 2008 hearing. (AR at 46-50.)

On February 25, 2008, ALJ Schloss denied Plaintiff's application for benefits. (AR at 12-23.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 13, 2005, the alleged onset date. (Id.) The ALJ further found that, pursuant to 20 C.F.R. 416.920(c), the medical evidence established that Plaintiff's impairment did not significantly limit her ability to perform basic work related activities for a period of 12 consecutive months and therefore, it was not a severe impairment withing the meaning of 20 C.F.R. §§ 404.1521, 416.921. (AR at 14.) The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(f). (AR at 22.)

On August 19, 2008, the Appeals Council denied review (AR at 4-6), and Plaintiff timely commenced this action for judicial review. On August 14, 2009, the parties filed a Joint Stipulation ("Joint Stp.") of disputed facts and issues. Plaintiff contends that the ALJ erred by failing to properly consider: (1) Plaintiff's treating physician's opinion regarding her mental impairments; (2) the type, dosage and side effects of Plaintiff's medication; (3) all of the evidence in the

record; and (4) the severity of Plaintiff's mental impairment. (Joint Stp. at 2-3). Plaintiff seeks reversal of the Commissioner's denial of her application and payment of benefits or, in the alternative, remand for a new administrative hearing. (Joint Stp. at 20-21.) The Commissioner requests that the ALJ's decision be affirmed. (Joint Stp. at 21.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//
//

**III. Discussion**

    **A.    The ALJ Accorded Appropriate Weight to the Opinion of Plaintiff's Treating Physician**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting two reports prepared by Plaintiff's treating psychiatrist, Dr. Maurice W. Black. (Joint Stp. at 3.) In a Riverside County Department of Mental Health form, dated November 16, 2007, Dr. Black reported that Plaintiff's thoughts were disorganized, she had auditory hallucinations and paranoid thoughts, her judgment was moderately impaired, and that she showed signs of anxiety, isolation and manic syndrome. (AR at 302.) Dr. Black also reported that Plaintiff did not show an ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period or adapt to new or stressful situations. (Id.) In addition, in an interdisciplinary progress note dated February 28, 2007, Dr. Black reported that Plaintiff had major mood swings. (AR at 301.)

Plaintiff argues that the ALJ improperly rejected Dr. Black's medical opinions. (Joint Stp. at 3.) In rejecting the November 16, 2007 report, the ALJ stated that "it appears [Dr. Black] was motivated by sympathy and the claimant's upcoming disability hearing, because he indicated the claimant had much greater limitations than before, even though her condition had been stable for over two years." (AR at 19.)[1] Plaintiff contends that it was improper for the ALJ to reject Dr. Black's medical opinions on the basis of the ALJ's unfounded assumption that Dr. Black was "motivated by sympathy." (Joint Stp. at 4.)

The ALJ should generally accord greater probative weight to a

---

[1] As noted, the hearing was started on November 19, 2007, three days after the report was written.

treating physician's opinion than to opinions from non-treating sources. See 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii); *Orn*, 495 F.3d at 631-33.

    The ALJ's statement that Dr. Black's November 16, 2007 report appears to have been motivated by Plaintiff's imminent disability hearing is not an unreasonable inference, given that Dr. Black found Plaintiff to have significantly greater limitations and symptoms in that report than had been generally described over the previous two years. Even assuming that it was improper for the ALJ to reject Dr. Black's November 16, 2007 medical report on the basis that Dr. Black was "motivated by sympathy" for Plaintiff, the ALJ also provided several legitimate, well-supported reasons for rejecting the report. First, the ALJ rejected the November 16, 2007 report based on the fact that it was consistently contradicted by Dr. Black's treatment notes. (AR at 19.) For example, the ALJ noted that, according to the treatment records,

Plaintiff's "condition is controlled as long as she takes her medications, and she is generally only seen for medication refills." (AR at 18.) The ALJ also thoroughly and in detail discussed the records of Plaintiff's monthly visits with Dr. Black from February through November 2007. (AR at 18-19.) *See Orn*, 495 F.3d at 632 (holding that the ALJ may reject the treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). The ALJ correctly noted that Dr. Black's treatment notes from these monthly visits generally state that Plaintiff is doing well on her medication, has few side effects from her medication, denies delusions or hallucinations, has no suicidal ideation, and that her mental status examinations are usually within normal limits. (Id.) It was reasonable for the ALJ to give less weight to Dr. Black's November 16, 2007 report because it was contradicted by his previous treatment notes and other evidence in the record. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding that contradiction between doctor's treatment notes and finding of disability was valid reason to reject treating physician's opinion); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1989) (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

    The ALJ also rejected Dr. Black's November 16, 2007 opinion because it was a "check-the-box" form without any supporting clinical or laboratory findings. (AR at 18-19.) The November 16, 2007 opinion is a one-page report, in which Dr. Black circled preprinted choices and did not provide any elaboration or explanation for his opinions. (AR at 19, 302.) Thus, it was reasonable for the ALJ to fail to give significant

weight to Dr. Black's November 16, 2007 report. *See Johnson*, 60 F.3d at 1432 (holding that ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

The ALJ also rejected Dr. Black's November 16, 2007 report because it was contradicted by the opinion of the testifying medical expert, Dr. Soltz. (AR at 19.) Dr. Soltz considered the medical record as a whole and found that, although Petitioner has bipolar disorder, it was not severe because she only has moderate difficulties in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation of extended duration. (AR at 19, 47-48.) Dr. Soltz disagreed with Dr. Black's November 16, 2007 opinion that Plaintiff was delusional, noting that there was no objective evidence in the file to validate Dr. Black's findings. (Id.) Dr. Soltz also noted that, when Plaintiff is on her medications, her impairment is not severe and she is "alert, casual, and coherent." (Id.) The ALJ credited Dr. Soltz's opinion, finding that it was consistent with the evidence as a whole, unlike Dr. Black's November 16, 2007 opinion, which was contradicted by medical and other evidence in the record. (AR at 19.) *See Tonapetyan*, 242 F.3d at 1149 (holding that the contrary opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record"). The ALJ also properly relied on the opinions of the State Agency physicians in rejecting Dr. Black's November 16, 2007 report. (AR at 19.) The consulting psychiatrists, Drs. Hennings and Skopec, both determined that Plaintiff's mental impairment was not severe. (AR at 19, 219-232, 242-

252.)

In addition, the ALJ properly considered Dr. Black's February 28, 2007 progress note. (AR at 18.) On that date, Plaintiff saw Dr. Black, complaining of an increase in mood swings following a car accident. (AR at 18, 301.) The ALJ noted that, despite the increased mood swings, Plaintiff reported to Dr. Black that her energy was sufficient; she denied suicidal and homicidal ideation; her sleep was "okay;" and she was alert, oriented and coherent. (Id.) The ALJ properly considered and discussed Dr. Black's February 28, 2007 progress note.

The ALJ provided specific and legitimate reasons for rejecting Dr. Black's November 16, 2007 assessment, each of which is supported by substantial evidence in the record. Further, the ALJ properly considered Dr. Black's February 28, 2007 progress note. Accordingly, no relief is warranted on this claim of error.

**B.   The ALJ Properly Considered the Type, Dosage and Side Effects of Plaintiff's Medication**

Plaintiff contends that the ALJ failed to properly consider the type, dosage, and side effects of her medication. (Joint Stp. at 10.) In addition, Plaintiff argues that the ALJ failed to properly consider an increase in Plaintiff's prescribed dosage of the drug Trileptal as demonstrating an episode of decompensation. (Joint Stp. at 11.)

"The ALJ must consider *all factors* that might have a 'significant impact on an individual's ability to work.'" *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993) (emphasis in original) (quoting *Varney v. Secretary of Health & Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1987)), *relief modified*, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." *Erickson*, 9 F.3d at 818; *Varney*, 846 F.3d at 585 ("[S]ide effects can be

a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.") (citation omitted). However, Plaintiff bears the burden of producing medical evidence to show that any claimed side effects from medication are severe enough to interfere with her ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that "passing mentions of the side effects of ... medication in some of the medical records" was insufficient evidence).

As support for her claim, Plaintiff notes a myriad of possible side effects caused by the medications Risperdal and Lexapro. (Joint Stp. at 10). The Court notes that the Social Security regulations do not require an ALJ to consider a claimant's medications as part of every disability determination. The mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons.

This specific information must be presented to the ALJ as part of the claimant's burden to demonstrate disability. If Plaintiff's medications prevent her from working, she has to say so. Only at that point does the type, dosage, effectiveness, and side effects of medication become relevant, so the ALJ can evaluate Plaintiff's credibility. As the regulations make clear, the ALJ must consider these factors only "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects," because "the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of

the individual's statements." SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. 1996). Absent an individual's statements of impairment at the outset, the ALJ has no duty to inquire as to the claimant's medications.

Plaintiff has failed to demonstrate that side effects from her medications precluded her from engaging in any substantial gainful activity. During the administrative hearing, Plaintiff stated that she felt tired, but it is unclear from the record whether this fatigue was a side effect of any of her medications. (AR at 37-38, 40.) Plaintiff did not claim that she was unable to work due to side effects from her medication. Further, the ALJ did note that, on a single occasion, Plaintiff had "some drowsiness as a side effect, but Dr. Black noted [Plaintiff] had a more even mood." (AR at 18, 297.) Plaintiff also cites to a single entry in her medical records, dated May 18, 2005, which states that she has the adverse reactions of "equilibrium/dizzy." (AR at 218.) However, it is unclear from the medical record which of three different drugs that Plaintiff was taking caused these alleged adverse reactions. (Id.) Aside from these two isolated entries in a medical record spanning a period of more than two years, there was no other evidence in the record regarding any serious side effects from Plaintiff's medication or any evidence indicating that the side effects of Plaintiff's medications would have impaired her ability to work. *See Osenbrock*, 240 F.3d at 1164. In fact, the longitudinal treatment notes show that Plaintiff had a good response to her medication and generally reported no side effects. (AR at 202, 206, 218, 292, 297, 299, 301, 304.)

Plaintiff also claims that an increase in her prescribed dosage of

Trileptal[2] to 600 milligrams twice daily on June 20, 2007 should have been considered as an episode of decompensation[3] by the ALJ. (Joint Stp. at 11; AR at 297.) The ALJ determined that Plaintiff "has experienced no episodes of decompensation. [Plaintiff] was hospitalized on one occasion overnight, before the alleged onset date. Since that time, her condition has been stable with medication." (AR at 22.)

There is no evidence in the record to show that Plaintiff experienced any episodes of decompensation. In fact, on the date that Plaintiff's dosage of Trileptal was increased, June 20, 2007, the treatment notes indicate that Plaintiff was medically compliant and had a good response to her medication with no side effects. (AR at 297.) It was also reported that Plaintiff had no hallucinations, paranoia, delusions, or suicidal or homicidal ideation; that her sleep and appetite were "ok;" and that she was alert and coherent. (Id.) On Plaintiff's next visit, on August 27, 2007, her mood, appearance, affect, attention, concentration, and speech were all within normal limits. (AR at 292.) It was also reported on that date that Plaintiff's medication adherence was "good" and her medication response was "very good." (Id.) Further, the State Agency physicians who reviewed the

---

[2] Trileptal is an anticonvulsant and mood stabilizing drug, used primarily in the treatment of epilepsy. It is also used to treat anxiety and mood disorders. http://www.ncbi.nlm.nih.gov/pubmed/17300991.

[3] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace .... Episodes of decompensation may be inferred from medical records showing significant alteration in medication; ... or other relevant information in the record about th existence, severity, and duration of the episode." "Episodes of extended duration" means "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks." 20 C.F.R. § 404, Subpart. P, App. 1, § 12.00.C.4.

evidence found no episodes of decompensation. (AR at 19, 219-232, 242-252.) Accordingly, substantial evidence supported the ALJ's finding that there were no episodes of decompensation.

Therefore, the ALJ properly considered the type, dosage and side effects of Plaintiff's medication and no relief is warranted on this claim.

### C. The ALJ Properly Considered All of the Relevant Evidence in the Record

Plaintiff next contends that the ALJ improperly determined that she experienced no episodes of decompensation because he failed to address the fact that her dosage of Trileptal was increased. (Joint Stp. at 15.) Plaintiff argues that the ALJ "selectively misrepresented the record regarding Plaintiff's episode of decompensation in order to support his own conclusion." (AR at 16.)

For the reasons discussed above, the ALJ's determination that there were no episodes of decompensation was supported by substantial evidence. An increase in Plaintiff's dosage of Trileptal on a single occasion does not, without more, show that she experienced an episode of decompensation, especially given that there was no other evidence of decompensation in the medical record. The ALJ was not required to address the one-time increase in Plaintiff's dosage of Trileptal. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."). Therefore, no relief is warranted on this issue.

### D. The ALJ's Determination that Plaintiff's Mental Impairment Was Not Severe is Supported by Substantial Evidence

Plaintiff claims that the ALJ improperly found that her mental

impairment is not severe. (Joint Stp. at 17.) Plaintiff contends that the treatment records completed by her treating psychiatrist, Dr. Black, on November 16, 2007 (AR at 302) and February 28, 2007 (AR at 299, 301) demonstrate that her mental impairment is severe. (Joint Stp. at 17.) Plaintiff also argues that the increase in her dosage of Trileptal on June 20, 2007 also demonstrates that she has a severe mental impairment. (Joint Stp. at 17-18.)

A claimant for disability benefits has the burden of producing evidence to demonstrate that he or she was disabled within the relevant time period. *Johnson*, 60 F.3d at 1432. The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). An impairment is not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Here, the finding that Plaintiff's mental impairment did not have more than a minimal effect on her ability to perform work-related functions for twelve consecutive months is substantially supported by

the record. As previously discussed, the ALJ properly relied upon Plaintiff's medical records and the opinions of the medical expert, Dr. Soltz, as well as the State Agency reviewing physicians, Drs. Hennings and Skopec, in concluding that Plaintiff does not have a severe mental impairment. (AR at 19, 47-48, 219-232, 242-252.) In addition, as discussed in detail above, the ALJ provided specific and legitimate reasons for rejecting Dr. Black's November 16, 2007 medical report and February 28, 2007 progress report, specifically because these two reports were without any supporting clinical or laboratory findings and were contradicted by the medical record, as well as by the opinions of the testifying medical expert and the reviewing psychiatrists. (AR at 16-19.) Also, the increase in Plaintiff's dosage of Trileptal on one occasion does not, without more, show that Plaintiff has a severe mental impairment.

The ALJ's conclusion that the impairment was not severe within the meaning of the regulations is supported by substantial evidence. Accordingly, Plaintiff is not entitled to relief on this claim.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

DATED: August 25, 2009

_____
Marc L. Goldman
United States Magistrate Judge